FILED

2014 Mar-12  AM 09:00
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

PENNSYLVANIA NATIONAL          )
MUTUAL CASUALTY INSURANCE
COMPANY,                       )

    PLAINTIFF,              )

VS.                            )          **2:13-cv-2338-JHH**

BALDONE FAMILY DENTISTRY,      )
P.C.; DR. CHARLES BALDONE;
B&H CONTRACTING, INC.;         )
BROOKWOOD HEALTH
SERVICES, INC.; BORDEN &       )
BREWSTER CONTRACTORS, INC.;
ROBINS & MORTON, LLC; and      )
UNITED FIRE & CASUALTY
COMPANY,                       )

    DEFENDANTS.             )

## MEMORANDUM OF DECISION

The court has before it the January 27, 2014 Motion (Doc. #14) to Dismiss Or, In the Alternative, Motion to Stay filed by Defendant B&H Contracting, Inc. ("B&H"). B&H simultaneously filed a brief and evidence (Doc. #15) in support of its Motion. On February 5, 2014, Defendant Brookwood Health Services, Inc. ("Brookwood") joined "in each ground, phrase and aspect of the memorandum of law [Doc 15] submitted by B&H Contracting in Support of its Motion to Dismiss [Doc

14]." (Doc. # 18).   Additionally, on February 10, 2014, Defendants Baldone Family

Dentistry, P.C. and Dr. Charles Baldone filed a Motion (Doc. # 26) to Dismiss Or, In

the Alternative, Motion To Stay, and adopted and incorporated all arguments made

by B&H in its memorandum in support of its Motion.  Both Motions (Docs. # 14 &

26) are now under submission, without oral argument, and are due to be granted in

full for the following reasons.[1]

## I. Background

On December 30, 2013, Plaintiff Pennsylvania National Mutual Casualty

Insurance Company ("Penn National") commenced this action against Defendants

B&H, Baldone Family Dentistry, P.C., Dr. Charles Baldone ("Baldone"), Brookwood,

Borden & Brewster Contractors, Inc. ("Borden"), Robins & Morton, LLC ("Robins")

and United Fire & Casualty Company ("United").[2]  (See Doc. #1.)  Penn National

seeks a declaratory judgment to determine its duties to defend and indemnify B&H,

Brookwood, Robins and/or Borden for claims made against them in an underlying

---

[1] Joining late to the game – after these two Motions (Docs. # 14 & 26) were under
submission – Defendant Borden & Brewster Contractors, Inc. filed a Motion (Doc. #30) to
Dismiss or in the Alternative Motion to Stay.  That Motion incorporated B&H's Motion and
memorandum in support.  Similarly, on March 5, 2014, Robins & Morton Group filed a Motion
(Doc. # 32) to Dismiss or in the Alternative Motion to Stay, incorporating the same. As such,
Boden's and Robins & Morton's Motions (Doc. #30 & 32) are also due to be granted for the
reasons stated herein.

[2] The court notes that United has not been served with a copy of the Summons and
Complaint.  (See doc. # 7.)

2

lawsuit, *Baldone Family Dentistry P.C. and Dr. Charles Baldone v. B&H Contracting, Inc., at al.*, Civil Action No. CV-2012-902634 ("the underlying lawsuit" or "state court action"), which is currently pending in the Circuit Court of Jefferson County, Alabama.[3]

The state court action arose from an incident that occurred during construction to expand Brookwood's medical center campus, which neighbors the Baldone dental facility. (Doc. #1-1.)   In the underlying lawsuit, Baldone alleges that sewer lines backed up and flooded Baldone's dental facility in October 2010 as a result of a construction error on the part of Robins, Borden and B&H.[4]  (Id. ¶¶ 11-14.)  Baldone contends that due to the flooding, it had to close its dental facility for seven months for cleaning and rebuilding, thereby incurring renovation costs as well as revenue losses and damage to its reputation.  (Id. ¶¶ 14-20.)

Less than three months after the underlying complaint was filed, Baldone's insurer, ProAssurance Indemnity Company, Inc. ("ProAssurance"), intervened in the underlying lawsuit to recover from Robins, Borden, and B&H the amount of $300,235.89 in insurance benefits it paid to Baldone. (Exh. A. to Doc. #15.)  A few

---

[3] B&H and Borden notified Penn National of the incident which led to the underlying suit when it occurred in October 2010.  Penn National has defended B&H and Borden in the underlying state court action since its inception and continues to do so to date.

[4] Brookwood hired Robins as its general contractor for the construction project, who in turn hired Borden as a subcontractor, who then hired B&H as a subcontractor.

days later, Penn National moved to intervene in the underlying lawsuit as well, but for the <u>limited purpose</u> of participating in discovery and submitted special verdict forms or special interrogatories to the jury. (Exh. B to Doc. #15.) Penn National did not seek a full intervention to determine its defense and indemnity obligations, but instead "reserve[d] the right . . . to amend [its] Complaint in Intervention to seek a declaration of its rights, duties, and obligations" under the policy. (<u>Id.</u> at 31 ¶ 7.)

Borden and B&H objected to Penn National's limited motion to intervene, arguing that Borden and B&H would be prejudiced because Penn National sought to have its obligations under the policy determined in conjunction with Baldone's liability claims.[5] (Exh. C to Doc. #15.) Baldone also objected to Penn National's limited intervention, arguing that if Penn National were allowed to intervene, it should intervene as a full participating party to the action. (Exh. D. to Doc. # 15.) The state court indicated from the bench that it would deny the motion to intervene, but no order ruling on the motion has been entered to date.

Although pending for over eighteen months, the claims in state court action continue to change and evolve. On January 24, 2014, Baldone filed its First Amended Complaint (Exh. a to Doc. #27), which, among other things, added claims

_____

[5] Instead, Borden and B&H argued that Penn National's coverage issued should be adjudicated after a factual determination as to the nature of the property damage to the dental facility which will resolve Baldone's liability claims.

of "negligent hiring and supervision and negligent coordination of subcontractors" as well as "third party beneficiary of contract." (Id.)  Baldone contends that "Robins and Borden failed to ensure that defendant B&H had adequate insurance to protect . . . Baldone . . . from injuries and damages arising out of B&H's negligent performance." (Id. ¶ 35.)  Baldone also alleges that the contracts between Robins and Borden and between Borden and B&H "required . . . for defendants to have adequate insurance coverage in place in case the work was not performed in a safe and competent manner." (Id. ¶ 40.)

## II. Discussion

The Declaratory Judgment Act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995).  Indeed, the Supreme Court has "repeatedly characterized the Declaratory Judgment Act as an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." Id. at 287 (citations omitted).  As the Eleventh Circuit has observed, the Act "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328, 1330 (11th Cir. 2005). A district court has discretion to "decline to entertain a declaratory judgment action on the merits when a pending proceeding in another court will fully

resolve the controversy between the parties." <u>Ven-Fuel, Inc. v. Department of the</u> <u>Treasury</u>, 673 F.2d 1194, 1195 (11th Cir. 1982).  District courts must balance the interests of federalism, comity, and efficiency in determining whether to hear a declaratory judgment action when confronted with a parallel state action.[6] <u>Ameritas</u> <u>Variable Life Ins. Co.</u>, 411 F.3d at 1330-31.

Penn National's Complaint seeks a declaration both as to its duty to defend B&H, Borden, Robins and/or Brookwood in the underlying lawsuit and as to its duty to indemnify.  (<u>See</u> Compl.)   Throughout its opposition to the Motions to Dismiss, Penn National concentrates only on the duty to defend issue and seems to concede the fact that "an insurer's duty to indemnify is not ripe for adjudication in a declaratory judgment action until the insured is in fact held liable in the underlying suit." <u>Assurance Co. of America v. Legendary Home Builders, Inc.</u>, 305 F. Supp.2d 1266, 1270 (S.D. Ala. 2003) (citations omitted).   Thus, it is undisputed that the duty to

---

[6] To assist district courts in this endeavor, the Eleventh Circuit listed a non-exhaustive set of "guideposts" to be considered, including: (i) the state's interest in deciding the matter; (ii) whether a judgment in the federal action would completely resolve the controversy; (iii) whether the declaratory judgment action would clarify the parties' legal relations; (iv) whether the federal action amounts to procedural fencing; (v) whether a ruling in the federal action would increase friction between federal and state courts or otherwise encroach on state proceedings; (vi) whether a superior alternative remedy exists; (vii) whether underlying facts are important to informed resolution of the matter; (viii) whether the state court is better situated than the federal court to evaluate those facts; and (ix) the nexus (if any) between the underlying issues and state law/policy, and whether federal common or statutory law requires resolution of the declaratory action.   <u>Ameritas Variable Life Ins. Co.</u>, 411 F.3d at 1331.

indemnify is not ripe.  Therefore, the court must move to the heart of the matter - the duty to defend.

After consideration of the facts before the court, the court declines to exercise its discretionary jurisdiction over this declaratory judgment action and concludes that the duty to defend is not ripe for adjudication for the simple fact that a determination of Penn National's duty to defend is not possible without resolution of the underlying facts in the underlying state court case.  This case is not one where the insurer's duty to defend is based strictly on the underlying complaint and the policy at issue.

Instead, Baldone is seeking damages resulting from sewage flooding of its dental facility.  The underlying action in state court will necessarily consider a great deal of evidence and make specific factual determinations as to the nature of the property damage.  A determination of Penn National's duty to defend is premature until the nature of these damages to Baldone's dental facility are determined. Additionally, the newly asserted claims in Baldone's Amended Complaint require a determination of Penn National's duty to defend and indemnify.[7]

Penn National is essentially asking the court to adjudicate its coverage issues

---

[7] The court acknowledges the fact that Penn National is not a party in the state court action and that Borden, B&H and Baldone objected to its limited intervention.  However, it seems clear from the briefs before the court that a full intervention would not be objected to by the parties, but instead, is highly appropriate in light of the Amended Complaint.

separately from the underlying factual evidence in the state court action.  The court refuses to engage in such piecemeal litigation as it will "increase the friction between out federal and state courts and improperly encroach on state jurisdiction." <u>Ameritas</u>, 411 F.3d at 1331.    As such, the court declines to exercise its discretionary jurisdiction over this case.  Plaintiff's complaint will be dismissed, without prejudice, in a separate order.

      **DONE** this the __12th__ day of March, 2014.


SENIOR UNITED STATES DISTRICT JUDGE